NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEREMY MARTIN HAAR, | : |
| Plaintiff, | : |
| v. | : Civ. No. 22-7595 (CCC) (LDW) |
| CFG HEALTH SERVICES, LLC, et al., | : **OPINION** |
| Defendants. | : |

**CLAIRE C. CECCHI, U.S.D.J.**

*Pro se* plaintiff Jeremy Martin Haar, an inmate at FCI Pekin in Illinois, commences this civil rights action pursuant to 42 U.S.C. § 1983 stemming from the defendants' alleged deliberate indifference to his serious medical needs while he was detained at Essex County Correctional Facility ("ECCF"), in Newark, New Jersey.[1] ECF No. 1. Haar also moves to proceed *in forma pauperis* ("IFP"). ECF No. 7. The Court finds that Haar has demonstrated indigence. *See* 28 U.S.C. § 1915(a)(1) & (2). Thus, IFP status is appropriate and his IFP motion is granted. Notwithstanding Haar's eligibility for IFP status, the Court is still required to screen the complaint. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). Upon screening, for the reasons below, Haar's complaint will be dismissed in part and permitted to proceed in part.

**I.     BACKGROUND**[2]

On November 28, 2020, Haar was found unconscious in his cell at ECCF. ECF No. 1 at 4. He "informed the guard that [he] hit [his] head on the toilet and was extremely nauseous, dizzy,

---

[1] Haar does not specify in the complaint whether he was a convicted prisoner or a pretrial detainee during the relevant time.

[2] For screening purposes, the Court accepts the well-pleaded, plausible allegations in the amended complaint as true.

and in severe pain." *Id.* The guard informed someone from the infirmary, which is "run by [CFG Health Systems, LLC ("CFG")]." *Id.* An unidentified nurse (John Doe) went to Haar's cell, and Haar informed the nurse of "[his] injury and the ailments it was causing [him]." *Id.* Haar asked to go to the hospital, but the nurse "left [Haar's] cell without performing any examination or treatment besides telling [him] to lay down and giving [him] an [over-the-counter] pain reliever." *Id.*

Thereafter, "CFG . . . and its employees" ignored his sick calls and "on at least one occasion [ECCF] staff were told by CFG staff not to send [Haar] to the infirmary because they would not help him." *Id.* An unidentified individual (Jane Doe) "was informed countless times" of Haar's "pain, suffering, and need for care by [Haar's] sick calls as well as [Haar] telling her during pill call," but she "ignored the sick calls" and told Haar that she could not see him or "force anyone in the infirmary to see [him] and provide care." *Id.* Haar's injuries included "head injury, severe migraines, pain, suffering, emotional and psychological injury," and the "only care provided was a migraine and pain reliever." *Id.* at 6. The duration of Haar's headaches is unclear; he does not specify how long he suffered from headaches or whether he continues to suffer from migraines or other headache-type pain, nor does he allege whether he ever received a diagnosis.

The defendants named in the complaint are CFG, John Doe, Jane Doe, Alfaro Ortiz, William Anderson, Charles Green, and the Essex County Department of Corrections (the "ECDOC"). *Id.* at 2–3. Haar seeks to hold Green, Anderson, and Ortiz (the "Administrative Defendants") liable because they "were all part of the administrative staff," "were made aware of [his] need for and lack of medical care," but "failed/refused" to respond. *Id.* at 5. He seeks to hold the ECDOC liable because "they were responsible for [his] welfare while [he] was incarcerated in their facility," and "they and their staff failed to provide a safe living environment by contracting

2

with [CFG] to run their facility" when CFG "has a documented history of failing to provide adequate medical care and treatment to inmates." *Id*. Haar seeks a declaration that his constitutional rights were violated and compensatory and punitive damages in excess of $6,000,000.

## II.     DISCUSSION

District courts are required to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, to adequately plead a plausible § 1983 claim against supervisors, Haar must plead facts that, if proven, would show that they were personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be accomplished in one of two ways: First, a supervisor may be held liable for enacting a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, a supervisor may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending

4

incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

Construing the complaint liberally, Haar appears to assert claims for deliberate indifference to his serious medical needs arising out of the allegedly inadequate medical care he received for injuries he suffered when he hit his head on the toilet. If Haar was a convicted and sentenced prisoner when his claims arose, his § 1983 claims concerning his medical treatment arise under the Eighth Amendment. If he was a pretrial detainee at the time, his claims fall under the Due Process Clause of the Fourteenth Amendment. Either way, the same standard applies. *See Butler v. CFG Health Servs. Inc.*, No. 21-13354, 2022 WL 138085, at *1 (D.N.J. Jan. 12, 2022) ("A pretrial detainee's rights with respect to medical care flow from the Fourteenth Amendment rather than the Eighth Amendment, but the standard under both provisions is the same: deliberate indifference to the detainee's serious medical needs.") (citing *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 584 (3d Cir. 2004); *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)).

To state a claim for inadequate medical care, Harr must allege: (1) he had a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A medical need is "serious" if it: (1) "has been diagnosed by a physician as requiring treatment"; (2) "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) is one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (Ambro, J., dissenting in part) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the severity of the medical

5

problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998). Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard requires that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew that inference. *Natale*, 318 F.3d at 582.

As an initial matter, the ECDOC is not a "person" amenable to suit under § 1983, and thus, is not a proper defendant. *See Echevarria v. Essex Cnty. Dep't of Corr.*, No. 20-498, 2020 WL 831073, at *2 (D.N.J. Feb. 20, 2020) ("Neither a county jail nor a county department such as the Essex County Department of Corrections are 'persons' amenable to suit under § 1983.") (citing *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 301 (D.N.J. 2015); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. April 8, 2015)). Accordingly, the complaint will be dismissed with prejudice as against the ECDOC.

The complaint will also be dismissed as against the Administrative Defendants. To the extent Haar seeks to hold these defendants liable as supervisors, he has not plausibly alleged the requisite personal involvement. He does not identify a specific policy, practice, or custom these defendants enacted, nor does he allege they participated in the alleged medical indifference, directed John or Jane Doe to violate Haar's constitutional rights, or had contemporaneous knowledge of allegedly inadequate medical care. *See*, *e.g.*, *McAnulty v. Mooney*, No. 13-03104, 2016 WL 26079, at *6 (M.D. Pa. Jan. 4, 2016) ("Absent a 'belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner,' the DOC Defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference.") (quoting *Innis v. Wilson*, 334 F. App'x 454, 456–57 (3d Cir. 2009)). Rather, he alleges that the

Administrative Defendants "were made aware of [his] need for and lack of medical care" via grievances, emails, and phone calls, and "failed/refused" to respond. ECF No. 1 at 5. But these types of allegations—i.e., that grievances were sent to a warden or other administrator—are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it. *See, e.g.*, *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegations they had received grievances; "Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Butler v. Penchishen*, No. 22-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability."); *Brown v. Smith*, No. 18-00193, 2019 WL 2411749, at *5 (W.D. Pa. June 7, 2019) ("It is 'well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct.'") (quoting *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013)). In short, Haar does not plausibly allege that the Administrative Defendants were personally involved in the alleged wrongs through direct participation and/or policymaking. Accordingly, the claims against the Administrative Defendants will be dismissed without prejudice. *See Iqbal*, 556 U.S. at 678.

The claims against CFG will also be dismissed without prejudice. A private or government healthcare provider cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior*. *See Natale*, 318 F.3d at 583–84. Rather, a healthcare provider is subject to liability under Section 1983 only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–694 (1978)); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("[T]o hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had 'a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s].'" (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)). Here, Haar has failed to allege that CFG had a policy or custom that caused the alleged violation of his constitutional rights. And his conclusory allegation that CFG "has a documented history of failing to provide adequate medical care and treatment to inmates" lacks sufficient factual detail to support a reasonable inference that CFG had a policy or custom responsible for the alleged violation of Haar's constitutional rights. *See Butler v. CFG Health Servs. Inc.*, No. 21-13354, 2022 WL 138085, at *3 (D.N.J. Jan. 12, 2022) ("[T]o hold CFG Health Services liable for his injuries, Plaintiff must provide facts showing that this entity had a relevant policy or custom, and that policy violated his constitutional rights. Here, Plaintiff provides no facts to suggest that there is a relevant policy or custom or that the policy or custom caused any constitutional violations.") (citations omitted). Accordingly, the claim against CFG will be dismissed without prejudice.

Haar's remaining claims are against the two nurses, John Doe and Jane Doe. To begin with, it is not entirely clear that Haar suffered from a "serious" medical condition. As noted above, to

establish his migraine/headache condition was "serious," Haar must allege that his condition was either diagnosed by a physician; obvious to a layperson that a doctor's attention was required; or would result in the unnecessary and wanton infliction of pain or a permanent handicap if treatment were delayed or denied. *Atkinson*, 316 F.3d at 272–73. Haar does not provide medical records; he does not allege a medical diagnosis; and he does not provide additional details such as the duration and frequency of the pain, whether the condition continued to the time he filed his complaint, or whether a permanent condition or handicap has resulted. Nonetheless, construing his complaint liberally, the Court assumes he is alleging that he was suffering from a severe migraine or concussion as a result of hitting his head on the toilet and losing consciousness, and that the denial of treatment for such a condition would result in wanton and unnecessary pain sufficient to establish, at this early pleading stage of the litigation, that Haar had a "serious" medical condition, at least when he complained of head pain in the hours and days after allegedly losing consciousness.

Nonetheless, Haar's assertion that nurse John Doe told him "to lay down and [gave him] an [over-the-counter] pain reliever" (ECF No. 1 at 4) does not plausibly allege a constitutional violation. Even assuming Haar has alleged a serious medical need, his allegations fail to show that John Doe knew that Haar faced a substantial risk of harm and intentionally ignored that risk. To the contrary, it appears that John Doe provided treatment in the form of pain medication and an instruction to lie down. *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (mere difference of opinion between prison medical staff and inmate regarding diagnosis or treatment does not constitute deliberate indifference). On these facts, Haar has not alleged deliberate indifference. *See*, *e.g.*, *Trepagnier v. Orleans Just. Ctr.*, No. 21-1796, 2022 WL 468956, at *6 (E.D. La. Jan. 20, 2022) (plaintiff has failed to plausibly allege deliberate

9

indifference where he alleged that "a falling piece of metal hit him on his head, no deputy was nearby at the time, he started feeling dizzy, he asked the CMT to call medical, he reported headaches to medical for which he received medical care (i.e., Tylenol), and he continues to report headaches to medical for which he receives medication (i.e., Tylenol)"), *report and recommendation adopted*, 2022 WL 464552 (E.D. La. Feb. 15, 2022). At best, John Doe's actions were negligent, but negligence is insufficient to support a § 1983 claim. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (plaintiff who demonstrates conduct rising only to the level of negligence or medical malpractice fails to make out a claim for relief under § 1983). Accordingly, the complaint will be dismissed without prejudice as against John Doe.

The Court will, however, allow the claim against Jane Doe to proceed. At this early stage of the litigation, Haar's allegations against Jane Doe—that she "was informed countless times" of Haar's "pain, suffering, and need for care by [Haar's] sick calls as well as [Haar] telling her during pill call," but she "ignored the sick calls" and told Haar that she could not see him or "force anyone in the infirmary to see [him] and provide care" (ECF No. 1 at 4)—state a cognizable claim for deliberate indifference. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care") (internal citations and quotations omitted). Accordingly, the Court will allow this claim to proceed against Jane Doe.

Typically, the Court would order the Clerk to issue summonses in connection with claims that have survived the screening process. But no summons can issue now because Jane Doe has not been identified. *See, e.g.*, *Fennell v. Port Auth. of N.Y. & N.J.*, No. 22-4545, 2023 WL 2784406, at *5 (D.N.J. Apr. 4, 2023) ("Certain claims do survive as against the individual defendants, but the individual defendants have not been identified. Because Mr. Fennell does not state the officers'

10

names, no summons can be issued at this time."); *Haines v. Does*, No. 07-5395, 2008 WL 1766622, at *9 (D.N.J. Apr. 14, 2008) (same) (citation omitted). Haar shall be given ninety (90) days to obtain information, by subpoena or otherwise, as to the identity of Jane Doe, so that the caption can be amended and a summons can issue.

### III. CONCLUSION

For the reasons stated above, Haar's IFP application (ECF No. 7) is granted and the complaint (ECF No. 1) will be permitted to proceed, in part, as follows: (1) the § 1983 claim against Jane Doe may proceed; (2) the § 1983 claim against ECDOC is dismissed with prejudice; and (3) the § 1983 claims against the administrative Defendants, CFG, and John Doe are dismissed without prejudice. Haar shall have ninety (90) days to file an amended complaint that identifies Jane Doe. In any amended complaint, Haar may also attempt, if he wishes, to amend his dismissed claims to state a cause of action. An appropriate Order accompanies this Opinion.

Dated: July 10, 2023

/s/Claire C. Cecchi
HON. CLAIRE C. CECCHI
United States District Judge