**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| JEREMY MARTIN HAAR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. No. 22-7595 (CCC) (LDW) |
| v. | : | |
| | : | |
| CFG HEALTH SERVICES, LLC, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

---

**CLAIRE C. CECCHI, U.S.D.J.**

Pro se plaintiff Jeremy Martin Haar, an inmate at FMC Devens in Massachusetts, seeks to commence a civil rights action pursuant to 42 U.S.C. § 1983 stemming from the defendants' alleged deliberate indifference to his serious medical needs while he was a pretrial detainee at Essex County Correctional Facility ("ECCF") in Newark, New Jersey. ECF No. 16. The Court previously (1) granted Plaintiff's *in forma pauperis* ("IFP") motion; (2) screened his initial complaint, *see* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B); and (3) dismissed the initial complaint in part and allowed Plaintiff's § 1983 claim against a Jane Doe defendant to proceed. ECF No. 11 (opinion), 12 (order). Plaintiff was given 90 days to (1) file an amended complaint identifying Jane Doe, and (2) attempt to amend his dismissed claims to state a cause of action. ECF No. 11 at 11; ECF No. 12 at 1–2. Before the Court is Plaintiff's (1) amended complaint (ECF No. 16) and (2) motion to compel screening of the amended complaint (ECF No. 18). For the reasons below, the amended complaint will be dismissed in part and permitted to proceed in part, and Plaintiff's motion to compel will be denied as moot.

I.    **BACKGROUND**

For screening purposes, the Court accepts the well-pleaded, plausible allegations in the amended complaint as true.

On November 28, 2020, Plaintiff was found unconscious in his cell at ECCF. ECF No. 16 at 2. He "was awoken by an officer," *id.* ¶ 11, and informed the officer that he was dizzy when he got up to use the rest room and "must have hit his head on the metal toilet as he had a bruise on his head, his head felt as if it was being stabbed with ice picks, [and] he felt extremely dizzy, nauseous[,] and was unable to stand." *Id.* ¶ 12. The officer informed Plaintiff "that he would call medical and request that someone from the infirmary come [and] evaluate him." *Id.* ¶ 13. A nurse employed by CFG Health Services ("CFG") came to Plaintiff's cell. *Id.* ¶ 14. Plaintiff requested "that he be taken to the hospital as he was displaying signs of a traumatic brain injury." *Id.* ¶ 15. The nurse "refused to send plaintiff to the hospital as he said that unless you are dying we don[']t send you to the hospital." *Id.* ¶ 16.

The next morning, Plaintiff "began filing sick calls, stating that he was unable to eat, was extremely dizzy, nauseous, as well as showing continuous signs of a potential concussion and traumatic brain injury." *Id.* ¶ 17. Plaintiff spoke with "Ms. [Tracie] Jean-Francois" about his ailments during "pill line." *Id.* ¶ 18. She said "she would look into it," *id.*, and "later returned to Plaintiff's cell and told him that the nurse practitioner Mr. O informed her that if [Plaintiff] was coherent and able to talk [he] most likely did not have a head injury and [he] would see [Plaintiff] as soon as it was convenient to him." *Id.* ¶ 19.

Plaintiff (1) continued "submitting . . . sick calls stating that he was still showing symptoms of a head injury"; (2) "continuously asked the pill line nurses when he would be seen including Ms. Jean-Francois and Ms. [Marie] Souprant"; and (3) Jean-Francois and Souprant "continuously

told [Plaintiff] that they understood that he was in severe pain and unable to eat however they could not see him themselves or force the infirmary to see him, provide him care, or send him to the hospital." *Id.* ¶¶ 20–22. Over the next "few weeks," Plaintiff, "at every opportunity," informed "correctional staff" and "CFG staff" of his symptoms. *Id.* ¶ 22. Plaintiff also emailed the "Wardens of ECCF," and spoke to "the Warden" when he did rounds. *Id*. ¶ 23. Plaintiff's "family and legal team" "sent several emails and placed several phone calls to Warden Cirillo, Green, and Anderson, as well as to CFG[']s main office and the infirmary at ECCF." *Id*. ¶ 25.[1]

On December 28, 2020, which was one month after the date Plaintiff allegedly hit his head, "Plaintiff spoke to Michelle Ashford[,] a nurse employed by CFG[,] and told her that he was still suffering from severe pain, could not eat, and was still having trouble seeing clearly and asked if she could please speak to NP Ojelade as he said he would see plaintiff but still hadn't" (*id*. ¶ 27). Ashford informed Plaintiff that "Ojelade refused to see the plaintiff and that she couldn't force him to." *Id*. ¶ 28.

On December 30, 2020—the day after Plaintiff's mother "reached out to New Jersey Senator Corey Booker's office"—Sgt. Matos brought Plaintiff to the infirmary. *Id.* ¶¶ 33–37. Plaintiff was "seen by Dr. P," who informed him that "she had h[ea]rd from countless inmates that their sick calls were ignored . . . [and] CFG tries to provide as little care as possible to save money." *Id*. ¶¶ 37–39. Dr. P also informed Plaintiff "that he most likely suffered a concussion, as well as a potential traumatic brain injury." *Id*. ¶ 40. Further, "Plaintiff had ruptured his inner ear drum when he fell and hit his head, and as a result was now diagnosed with vestibulopathy." *Id*. Dr. P. also "informed plaintiff that the headaches [he] had been experiencing would now most likely occur for years if not permanently as a result of his fall and not being given prompt treatment." *Id*. Dr. P

---

[1] Plaintiff does not provide copies of his sick call submissions or his emails, or the emails sent by his family and legal team.

prescribed Topomax to treat the migraines and told Plaintiff that "if his symptoms persisted . . ., including the nausea[,] to submit another sick call and she would try and see him as soon as possible." *Id*. ¶ 41. Plaintiff began taking the Topomax "and immediately began feeling relief." *Id*. ¶ 42. His nausea continued, however, so he "began submitting sick calls once again." *Id*. ¶ 43.

On January 10, 2021, Plaintiff "was brought down to medical on a stretcher after passing out in the housing unit." *Id*. ¶ 44. He was seen by Dr. Bing Gong. *Id*. ¶ 45. He informed Dr. Gong that "he was unable to eat due to constant nausea" and "his heart rate was over 110bpm." *Id*. ¶¶ 45–46. Dr. Gong "performed no examination" and did not "provide any diagnosis," but gave Plaintiff "adavan [sic] to slow his heart down and sent [] plaintiff back to his housing unit." *Id*. ¶ 47.

Plaintiff "continued submitting sick calls stating his nausea and blurred vision and continued informing pill line staff that he needed to be seen." *Id*. ¶ 49. He also "informed correctional staff as well as CFG staff at any opportunity he had that he was unable to eat and that he was losing significant weight." *Id*. ¶ 50.

On January 17, 2021, Plaintiff "was seen in the infirmary for his sick call stating that he was unable to eat." *Id*. ¶ 51. The nurse who examined Plaintiff "gave [him] a Boost nutritional drink and informed him that if he was able to keep it down she would ask the doctor to prescribe him a liquid diet." *Id*. ¶ 53. Plaintiff "was able to keep the [B]oost ingested" and the nurse told him she would inform the doctor of his need to be prescribed a liquid diet. *Id*. ¶ 54. Plaintiff then saw Dr. Grace Melendez, who would not proscribe the liquid diet because "she was not a neurologist and therefore would not prescribe anything without the plaintiff being properly diagnosed by a neurologist." *Id*. ¶¶ 55–57. Dr. Melendez "placed an order for plaintiff to be taken to a neurologist," but "admitted that it would most likely be several months" before Plaintiff could be seen by one.

*Id*. ¶ 58. Plaintiff requested to be sent to the hospital, but Dr. Melendez told him that "she was unable to send [him] to the hospital as it is policy not to send someone to the hospital unless they are 'dying' or it is 100% necessary." *Id*. ¶¶ 59–60. She told plaintiff "to eat bland foods and also prescribed him an anti-nausea medication." *Id*. ¶ 61.

On January 20, 2021, Plaintiff was seen by Dr. P "and informed her that he was still experiencing nausea unless he took the anti-nausea medication . . . and even then he was still nause[ous] and it was causing him to be constipated." *Id.* ¶ 62. Dr. P "made a note in plaintiff's medical records that he should be considered for release as the jail was unable to provide him proper and timely care needed to properly treat him." *Id*. ¶ 63.

At the time of the filing of the amended complaint, Plaintiff had "not been seen by a neurologist and [was] still displaying symptoms." *Id*. ¶ 64.

On the basis of these allegations, Plaintiff sues (1) CFG for "having a policy to provide inmates with as little medical care as possible . . . to save money," *id.* ¶ 66; (2) "Bing Gong, Grace Melendez, Michael Ojelade, Jean-Francois, and Marie Souprant (the "Individual Defendants") for "refusing to provide . . . adequate medical care" and for "acting with deliberate indifference to plaintiff's serious medical needs," *id.* ¶ 67; (3) William Anderson, Charles Green, Alfaro Ortiz, and Guy Cirillo (the "Administrative Defendants") for "refusing to help Plaintiff obtain medical care," *id.* ¶ 68; and (4) Essex County for "having a policy that staff can not force CFG . . . to provide care to inmates," *id*. ¶ 69. Plaintiff seeks a declaration that his constitutional rights were violated, and compensatory and punitive damages. *Id*. at 7–8.

## II. DISCUSSION

District courts are required to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings are liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial

> capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Construing the amended complaint liberally, Plaintiff appears to assert claims for deliberate indifference to his serious medical needs arising out of the allegedly inadequate medical care he received for injuries suffered when he fell and hit his head on the toilet. As Plaintiff was a pretrial detainee when his claims arose (ECF No. 16 at 1), his claims fall under the Due Process Clause of the Fourteenth Amendment. *See Butler v. CFG Health Servs. Inc.*, No. 21-13354, 2022 WL 138085, at *1 (D.N.J. Jan. 12, 2022) ("A pre-trial detainee's rights with respect to medical care flow from the Fourteenth Amendment rather than the Eighth Amendment, but the standard under both provisions is the same: deliberate indifference to the detainee's serious medical needs.") (citing *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 584 (3d Cir. 2004); *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)).

To state a claim for inadequate medical care, Plaintiff must allege: (1) he had a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A medical need is "serious" if it: (1) "has been diagnosed by a physician as requiring treatment"; (2) "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) is one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."

*Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998). Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard requires that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew that inference. *Natale*, 318 F.3d at 582. Allegations of medical malpractice or mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Cowan v. Primecare Med. Inc.*, No. 22-132, 2022 WL 180206, at *3 (E.D. Pa. Jan. 19, 2022) (citing *Spruill v. Gillis*, 372 F.3d 18, 235 (3d Cir. 2004)).

**A. Claims against Essex County and CFG**

The amended complaint will be dismissed as against Essex County and CFG because Plaintiff has failed to plausibly allege that either defendant had a policy or custom that caused the alleged violation of Plaintiff's constitutional rights.

A local government entity is a "person" for purposes of § 1983, *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997), and may be liable under § 1983 if it has a policy or custom that causes a violation of a plaintiff's constitutional rights. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer."). The municipal policy or custom must either be unconstitutional itself or be the "moving force" behind

the constitutional deprivation. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). Causation can be established by demonstrating that the policy or custom is facially unconstitutional or "by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The plaintiff has the burden of showing that a government policymaker "is responsible by action or acquiescence for the policy or custom." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007); *see also Warren v. Camden Cnty. Corr. Facility*, No. 16-6766, 2017 WL 168915, at *2 (D.N.J. Jan. 17, 2017) ("Plaintiff must plead facts showing that the relevant policy-makers on the Camden County Board of Freeholders are 'responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'") (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A private or government healthcare provider cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior*. *See Natale*, 318 F.3d at 583–84. Rather, as with a local government entity, a healthcare provider is subject to liability under Section 1983 only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell*, 436 U.S. at 693–694); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("to hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had a relevant policy or custom, and that the policy caused the constitutional violation he alleges") (cleaned up). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

The amended complaint will be dismissed as against Essex County because Plaintiff has failed to plausibly allege that Essex County had a policy or custom that caused the alleged violation of his constitutional rights. *Sanford*, 456 F.3d at 314. Plaintiff's sole allegation against Essex County is that it has "a policy that staff cannot force CFG . . . to provide care to inmates." ECF No. 16 at 7. This single allegation is too speculative and conclusory to state a plausible claim for municipal liability. *See*, *e.g.*, *Coyle v. Montgomery Cnty.*, No. 21-4704, 2023 WL 2576843, at *17 (E.D. Pa. Mar. 20, 2023) ("[T]he court understands that Coyle believes that his medical needs were either ignored or poorly treated while he was at MCCF, but that does not mean that he has included sufficient facts to state a plausible claim for municipal liability against the County").

Moreover, Plaintiff's reliance on his own alleged experience of insufficient medical care, standing alone, is not sufficient factual support for a plausible claim of municipal liability. *See*, *e.g.*, *id.*, at *18 ("[Coyle] also jumps to the conclusion, with no factual allegations to support his claim, that the County lacked sufficient policies and its employees lacked sufficient training regarding recording and maintaining medical slips. Coyle does not allege that this also occurred with other individuals incarcerated at MCCF; instead, he is manufacturing claims about a lack of policies or lack of training based only on what happened to him."); *Babner v. Cumberland Cnty.*, No. 20-02465, 2022 WL 743872, at *5 (M.D. Pa. Mar. 11, 2022) ("The plaintiff further alleges, in conclusory fashion, that the County has a policy of disregarding inmates' medical concerns. Beyond these vague assertions that existing policies were inadequate, the plaintiff points to no prior incidents from which we might reasonably infer that the County and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiff's § 1983 *Monell* claims are premised.") (citations omitted); *Brown v. Erie Cnty.*, No. 20-0251, 2021 WL 2228341, at *6 (W.D. Pa. May 18, 2021) ("Plaintiff's Amended Complaint and

brief in opposition also rely on the alleged deficiencies in the medical care provided to Orsini as evidence that Erie County had a policy of deliberate indifference to inmates' serious medical needs. In this regard, Plaintiff is attempting to reverse engineer a *Monell* claim based on the Amended Complaint's allegations of the underlying Eighth or Fourteenth Amendment violation. Plaintiff's reliance on the very treatment individuals at the jail provided to Orsini is nothing more than an assertion of *respondeat superior* liability, which the Supreme Court rejected in *Monell*.") (citations omitted), *report and recommendation adopted*, 2021 WL 2226462 (W.D. Pa. June 2, 2021); *Mason v. PrimeCare Med., Inc.*, 2017 WL 1386198, at *10–*11 (M.D. Pa. Apr. 18, 2017) ("Rather than highlight evidence that arguably could be construed to show a deficient policy, the plaintiff has merely relied upon the alleged failures of subordinate staff in an effort to bring a § 1983 claim against the employer—which is nothing other than an effort to bring a claim for *respondeat superior* liability.").

As nothing in the amended complaint suggests that the claimed constitutional violation stemmed from a municipal policy or custom or municipal deliberate indifference, the deliberate indifference claim against Essex County will be dismissed without prejudice.

The amended complaint will also be dismissed as against CFG because Plaintiff's conclusory allegation that CFG has "a policy to provide inmates with as little medical care as possible . . . to save money" is also too speculative and conclusory to support a deliberate indifference claim. *See McCloskey v. Welch*, 803 F. App'x 578, 583 (3d Cir. 2020) ("McCloskey's 'vague assertions' that the medical provider had a policy of providing inadequate medical care, without more, are inadequate to state a claim for relief under *Monell*."); *Winslow v. Prison Health Services*, 406 F. App'x 671, 674–75 (3d Cir. 2011) (allegation that plaintiff was harmed by

"policies to save money" is conclusory).[2] Indeed, "the naked assertion that Defendants considered

cost in treatment [of Plaintiff's medical needs] does not suffice to state a claim for deliberate

indifference, as prisoners do not have a constitutional right to limitless medical care, free of the

cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at

674.

Plaintiff's allegations that (1) a "Dr. P." told him that "that CFG tries to provide as little

care as possible to save money" (ECF No. 16 at 4); and (2) Dr. Melendez told him that "it is a

policy to not send someone to the hospital unless they are 'dying' or it is 100% necessary" (*id.* at

6), also do not provide support for a plausibly alleged policy because these statements are vague

and conclusory, and were not alleged to have been made by policymakers. See, *e.g.*, *Davis v. Cnty.*

*of Cape May*, No. 17-6876, 2019 WL 4463319, at *5 (D.N.J. Sept. 18, 2019) (plaintiff cannot rely

on the "off-handed comments" from a non-policy maker, "as it is always possible that one

employee will be ill-informed, or mistaken, or simply incompetent") (cleaned up); *La Verdure v.*

*County of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (finding that statements by a non-

---

[2] *See also, e.g.*, *Tripati v. Wexford Health Sources, Inc.*, No. 20-00427, 2022 WL 1516780, at *9 (W.D. Pa. Feb. 14, 2022) ("conclusory allegations about profit . . . cannot support a deliberate indifference claim"), *report and recommendation adopted*, 2022 WL 1013446 (W.D. Pa. Apr. 5, 2022); *Holliday v. Prime Care Med.*, No. 19-4564, 2021 WL 242469, at *11 (E.D. Pa. Jan. 25, 2021): ("Even construed liberally, the Amended Complaint does not state a plausible claim for relief against PrimeCare Medical because Holliday makes only conclusory allegations that PrimeCare Medical is seeking to save costs and thereby minimize treatment which encourages medical personnel employed by PrimeCare to ignore medical issues and not provide treatment. Holliday does not allege any substantive facts describing any actual policy, custom, or practice PrimeCare maintains that would have resulted in the constitutional violations he asserts regarding his medical care.") (citations omitted); *Bradshaw v. New Jersey*, No. 18-14089, 2019 WL 1930275, at *2 (D.N.J. May 1, 2019) ("Plaintiff makes general allegations that the Rutgers entities have policies and practices which preclude adequate health care. These conclusory allegations are insufficient to state a claim for relief. Plaintiff has not identified any specific facts which demonstrate that the Rutgers entities have customs or policies in place to deny inmates medical care.") (citations omitted); *Hampton v. Wetzel*, No. 14-1367, 2016 WL 815559, at *4 (M.D. Pa. Mar. 2, 2016) ("Importantly, the amended complaint lacks any facts to support Hampton's general conclusory statements that Corizon utilized inadequate methods of treatment simply to save money. Beyond these broadly worded conclusions, Hampton's amended complaint is devoid of *facts* demonstrating that Corizon's policies, customs, or practices led to deficient medical treatment.") (emphasis in original).

policymaker do not constitute county policy); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) (finding that the policy, and not the subjective beliefs of those who implement it, are the focus of a *Monell* analysis).

Plaintiff's allegedly deficient medical care is also an insufficient basis upon which to find a plausibly alleged policy. *See Richardson v. N.J. Dep't of Corr.*, No. 20-679, 2023 WL 1368015, at *3 (D.N.J. Jan. 31, 2023) ("Plaintiff's complaint raises conclusory allegations that Rutgers UCHC had a 'policy, practice, or custom' of taking various actions including failing to obtain medical records, understaffing prisons, ignoring grievances, and 'instructing staff to not review or lie' about medical records. Plaintiff, however, provides no factual allegations to support these conclusions. Plaintiff neither identified any formal policy enacted or announced by Rutgers UCHC that resulted in his mistreatment nor alleged any history of similar issues at Northern State Prison sufficient to indicate that policymakers at Rutgers UCHC should have known that" such issues existed.); *Davis*, 2019 WL 4463319, at *5 ("Nor does Plaintiff refer to any evidence to demonstrate a pattern of underlying constitutional violations, such as other incidents related to delayed medical care . . . . Ultimately, Plaintiff cannot rely solely on his incident to create a triable issue of material fact on [his] *Monell* . . . claim.") (cleaned up).

Accordingly, as conclusory allegations are insufficient to state a plausible claim for relief, and as Plaintiff has failed to plead facts showing that CFG has adopted a policy or custom which caused the alleged harm, Plaintiff's deliberate indifference claims against CFG will be dismissed without prejudice.

### B.  Claims against the Administrative Defendants

The amended complaint will be dismissed as against the Administrative Defendants—Anderson, Green, Ortiz, and Cirillo—because Plaintiff has not plausibly alleged the requisite personal involvement of these defendants.

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, to adequately plead a plausible § 1983 claim against supervisors, a plaintiff must plead facts that, if proven, would show that they were personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, a supervisor can be liable for enacting a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, a supervisor may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

Plaintiff does not plausibly identify a specific policy, practice, or custom these defendants enacted, nor does he allege they participated in the alleged deliberate indifference or directed the individual defendants to violate his constitutional rights, or had contemporaneous knowledge of allegedly inadequate medical care. *See, e.g.*, *McAnulty v. Mooney*, No. 13-03104, 2016 WL 26079, at *6 (M.D. Pa. Jan. 4, 2016) ("Absent a 'belief or actual knowledge that medical personnel

mistreated or failed to treat a prisoner,' the DOC Defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference.") (quoting *Innis v. Wilson*, 334 F. App'x 454, 456–57 (3d Cir. 2009). Rather, he alleges that the Administrative Defendants "refus[ed] to help Plaintiff obtain medical care" (ECF No. 16 at 7), even though he had emailed "the Wardens" and "spoke to the Warden when he did rounds," and his "family and legal team" "sent several emails and placed several phone calls to Warden Cirillo, Green, and Anderson." ECF No. 16 at 3–4. But these types of allegations—i.e., that grievances were sent to a warden or other administrator—are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it. *See, e.g.*, *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Butler v. Penchishen*, No. 22-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability."); *Brown v. Smith*, No. 18-00193, 2019 WL 2411749, at *5 (W.D. Pa. June 7, 2019) ("It is 'well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct.'") (quoting *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013); citation omitted).

Moreover, "[i]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Here, when Plaintiff contacted "the Wardens," he had

already been seen by a nurse (ECF No. 16 at 2), and had been informed that he would be seen by a nurse practitioner (*id.*). Thereafter, he was seen and treated by a nurse and three doctors. *Id.* at 4–7. These allegations do not set forth a viable deliberate indifference claim against the Administrative Defendants. *See*, *e.g.*, *Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."); *Holliday v. Prime Care Med.*, No. 19-4564, 2021 WL 242469, at *10 (E.D. Pa. Jan. 25, 2021) ("As alleged in the Amended Complaint, Holliday's claims against Warden Quigley and Deputy Warden Smith relate solely to their involvement in the grievance process and their alleged failure to act after learning about Holliday's complaints through that process. The Amended Complaint is devoid of any allegations that these Defendants, who are not medical personnel, had any personal involvement in the underlying conduct of which Holliday complains. Accordingly, he has not stated a plausible constitutional claim against either Warden Quigley or Deputy Warden Smith and his claims against them will be dismissed.")

In short, Plaintiff does not plausibly allege that the Administrative Defendants were personally involved in the alleged wrongs through direct participation and/or policymaking. Accordingly, the claims against them will be dismissed without prejudice.

### C. Claims against the Individual Defendants

Plaintiff alleges the Individual Defendants are liable for "refusing to provide . . . adequate medical care." ECF No. 16 at 7. As an initial matter, construing the amended complaint liberally, the Court finds at this early stage of the litigation that Plaintiff has plausibly alleged that his medical needs were sufficiently serious for purposes of obtaining relief under Section 1983.

Nonetheless, Plaintiff's allegations against Drs. Gong and Melendez do not plausibly allege a constitutional violation and the claims against them will be dismissed.

Even assuming Plaintiff has alleged a serious medical need, his allegations fail to show that Gong and Melendez knew that he faced a substantial risk of harm and intentionally ignored that risk. To the contrary, Plaintiff—who had already been prescribed medication for his migraines by "Dr. P" (ECF No. 16 at 5)—was seen and treated by both Gong (ECF No. 5 (who gave him adavan [sic] to slow his heart down")) and Melendez (*id.* at 6 (who (1) prescribed Plaintiff anti-nausea medication, and (2) placed an order for Plaintiff to be seen by a neurologist)). Plaintiff might disagree with the efficacy or propriety of the treatment he received, but he has not, as is required, plausibly alleged these defendants acted with a culpable state of mind. *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (difference of opinion between prison medical staff and inmate regarding diagnosis or treatment does not constitute deliberate indifference). Thus, on these facts, Plaintiff has not plausibly alleged that these defendants acted with deliberate indifference. At best, Gong and Melendez's alleged actions were negligent, but negligence is insufficient to support a § 1983 claim. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (plaintiff who demonstrates conduct rising only to the level of negligence or medical malpractice fails to make out a claim for relief under § 1983). Accordingly, the complaint will be dismissed without prejudice as against Gong and Melendez.

The Court will, however, allow the deliberate indifference claims against Ojelade, Jean-Francois, and Souprant to proceed. At this early stage of the litigation, Plaintiff's allegations against these defendants—that (1) he "continuously asked" Jean-Francois and Souprant when he would be seen and they "continuously told him that they understood he was in severe pain and unable to eat however they could not see him themselves or force the infirmary to see him, provide

care, or send him to the hospital" (ECF No. 3); (2) staff "including Jean-Francois told Plaintiff they could not force any of the doctors in the infirmary to provide care, that they could not help [him], and that [he] would just have to deal with it" (*id.*); and (3) "NP Ojelade refused to see [him]" (*id.*)—state a cognizable claim for deliberate indifference. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care") (internal citations and quotations omitted). Of course, it is possible that medical records and other discovery will contradict Plaintiff's allegations, but at this early screening stage of the litigation, he has alleged enough to proceed on this claim. Accordingly, the Court will allow the claims to proceed against Ojelade, Jean-Francois, and Souprant.

### III.    CONCLUSION

For the reasons stated above, the amended complaint (ECF No. 16) will be permitted to proceed, in part, as follows: (1) the § 1983 claims against Ojelade, Jean-Francois, and Souprant will be permitted to proceed; (2) the § 1983 claims against Essex County, CFG, Anderson, Green, Ortiz, Cirillo, Gong, and Melendez will be dismissed without prejudice. Plaintiff's motion to compel screening of amended complaint (ECF No. 18) will be denied as moot. An appropriate order follows.

*/s/ Claire C. Cecchi*

Dated: November 25, 2024

HON. CLAIRE C. CECCHI
United States District Judge